[Civ. No. 20898.   Second Dist., Div. Two.   May 24, 1955.]

HENRY C. HICKS, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

Cryer & Jones, George E. Cryer and R. Alston Jones, for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, George William Adams and John F. Feldmeier, Deputy City Attorneys, for Respondents.

FOX, J.—Plaintiff appeals from a judgment of dismissal after defendants' demurrer to his third amended complaint was sustained without leave to amend in a proceeding entitled "Action in Equity, to Vacate, Annul and Set Aside Final Order of Civil Service Commission of the City of Los Angeles Sustaining Charges against Plaintiff and Removing Him from his Position, on the Ground that said Order was Obtained by Extrinsic Fraud."

Briefly stated, the alleged facts are that defendant board of public works, on November 30, 1951, discharged plaintiff from the position of building operating engineer in the department of public works on the following charge: "Unsatisfactory performance of duties in that he permitted the water in the boiler to get so low that the gas automatically shut off, thereby cutting off steam in laundry and kitchen, and it was twenty-five minutes after power shut-off before Hicks heard the alarm. A failure of the automatic controls

would have jeopardized the entire plant. He was adjudged at fault in a similar incident in 1948.''

Plaintiff, pursuant to section 112(a) of the charter of the city of Los Angeles, filed a demand with the civil service commission for a hearing on said charge. A hearing was held by a hearing examiner appointed by the commission. Thereafter the examiner prepared and filed with the commission a report on the hearing containing findings and a recommendation that plaintiff's discharge be sustained. On April 15, 1952, the civil service commission entered an order sustaining the discharge.

The hearing examiner's report is not pleaded or attached as an exhibit. The amended complaint does not contain any allegation that the evidence was insufficient to support the hearing examiner's report and recommendation that the discharge be sustained or to support the action of the commission in sustaining the discharge.

The sole allegation upon which plaintiff bases his claim of extrinsic fraud is that the civil service commission eliminated from the hearing examiner's report the ''Findings'' contained therein and substituted in place thereof its own ''Conclusion.'' The findings of the examiner read as follows:

''Mr. Hicks was not suspended in 1948 for an incident in the boiler room *which caused a fire*. His superior testified he tried to give him another chance.

''With respect to the October 13, 1951, incident: Just why Mr. Hicks did not hear the alarm that the gas was off, is not for us to decide. Mr. Hiser, the cook, testified he heard the whistle when he went down to the boiler room to see why there was no steam at 5:30 a. m. The fact remains that Mr. Hicks testified he did not hear the alarm.

''The water in the boiler was low, whether from a defective float or not; the steam was shut off from approximately 5:30 to 7:00 a. m. and the entire plant was jeopardized.'' The recommendation was: ''Your hearing examiner recommends that the discharge be sustained.''

After submission of the report the commission deleted said findings and without having heard or received any evidence relative to the charges against plaintiff adopted and inserted in said report the following:

''From the evidence your hearing examiner concludes that the fuel shut-off and the resulting cutting off of steam to the laundry and kitchen on October 13, 1951, occurred because of the failure of Mr. Hicks to perform his duties in a

satisfactory manner. If he had been attending to his duties properly, the incident would not have occurred. If the automatic controls had failed to function, the entire plant would have been jeopardized.''

The amended complaint alleges that the commission ''well knew'' when it inserted this conclusion that the hearing examiner had not so found or concluded, and that the statement was inserted for the purpose of making it appear that the hearing examiner had found from the evidence the facts which the said civil service commission regarded as necessary to support an order sustaining the charge against plaintiff; that the hearing examiner had not made the findings or conclusion set forth in the report as adopted by the commission.

It was not until April 5, 1954, or almost two years after the date of the civil service commission order sustaining the discharge, that plaintiff filed his demand for reinstatement with that commission and a claim for compensation with the city clerk. He filed his original complaint herein on June 17, 1954.

Section 89 of the city charter authorizes the appointment of a hearing examiner to conduct hearings and take evidence, and to submit his written report giving his conclusions and recommendations. It provides in subdivision (c) that the commission ''may adopt, reject *or modify* the report of any examiner in whole or in part, *or may reconsider the matter in whole or in part*; . . .'' (Italics added.) Under this charter provision it is clear that the commission had authority to reevaluate the evidence in the examiner's report and to ''modify'' his findings or ''reject'' them and make other findings and draw its own conclusions. ▉ In so doing we must presume, in the absence of any allegation to the contrary, that the commission made appropriate examination of the examiner's written report. (Code Civ. Proc., § 1963, subd. 15; *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 28 Cal.2d 329, 339 [170 P.2d 18].) While it would have kept the record more precisely accurate if the commission had shown that the ''Conclusion'' was its own rather than attribute it to the examiner, plaintiff was not prejudiced by such procedure. While it is true that the ''Conclusion'' is expressed in somewhat different language from that of the findings of the examiner, it is essentially of similar import and reaches the same result. From the examiner's recommendation it is clear he concluded that plaintiff was at fault and

that the evidence sustained the charge against him. The "Conclusion" simply expressed the same idea in more succinct and appropriate language. There is no showing that the evidence in the examiner's report was not sufficient to justify either the examiner's recommendation or the commission's "Conclusion." ■ It is patently far-fetched, therefore, to contend that an administrative tribunal, charged with the final responsibility of decision, practiced an "extrinsic fraud" on plaintiff by substituting its "Conclusion" for the examiner's findings. There is nothing repugnant to any constitutional or equitable concept in such procedure. The city charter (§ 89) on its very face provides the agency with authority to do this very thing.

The Supreme Court had an analogous situation before it in *National Auto. & Cas. Co.* v. *Industrial Acc. Com.*, 34 Cal.2d 20 [206 P.2d 841]. There the Industrial Accident Commission made a determination contrary to that of the referee although, as here, it did not hear the testimony or observe the witnesses but, also as here, relied on the record. Labor Code, section 5315, then provided that "Upon the filing of the report of the referee, the commission may confirm, adopt, modify or set aside the same, or any part thereof and may, with or without further proceedings, and with or without notice, enter its order, findings, decision, or award based in whole or in part upon the report of the referee, or upon the record in the case." It will be observed that while the authority there conferred on the Industrial Accident Commission with respect to the report of its referee is spelled out in greater detail, it is nevertheless basically the same as that conferred on the city commissions by section 89(c) of the charter relative to their examiner's reports. At page 28 of the last cited case the court stated that ". . . the commission may make a factual determination contrary to that of a referee although the testimony is conflicting and it did not itself hear the testimony or observe the witnesses, but did examine the evidence and record." At page 29 the court pointed out that pursuant to the provisions of the Labor Code it had held in *Pacific Indem. Co.* v. *Industrial Acc. Com.*, *supra*, that "it was proper for the commission to grant a rehearing although the hearing referee recommended against it, and to direct him to reach a different result when he still entertained different views on the sufficiency of the evidence." These authorities sustain, *a fortiori*, the right of the civil service commission to take the action it did, in view of the

authority conferred by the charter provision, relieved of any taint of fraudulent conduct. For whether the commission's order was based solely on its adoption *in toto* of the examiner's report or upon its own modification of some phase of that report after a review of the record, plaintiff had a right to redress under section 112½ of the city charter if he felt his dismissal was unjustified. As will appear, plaintiff slept on that right. Having belatedly awakened, he cannot now recrudesce his rights by the transparent device of characterizing as extrinsic fraud the commission's legitimate exercise of the discretionary authority vested in it.

## LACHES

■ "Considerations of public policy require that an employee of a public body who claims to have been improperly or illegally discharged must act with utmost diligence in asserting his rights." (*Jones* v. *City of Los Angeles,* 120 Cal.App.2d 858, 859, 861 [262 P.2d 37] ; *Campbell* v. *City of Los Angeles,* 47 Cal.App.2d 310, 315 [117 P.2d 901].) In *Hayman* v. *City of Los Angeles,* 17 Cal.App.2d 674 [62 P.2d 1047], where there was a delay of nine months in filing suit, during which time plaintiff had attempted to obtain reinstatement to his position by negotiation, the court stated (p. 680) : "It is to be presumed that where one has been dismissed from an active position in the public service someone else has been chosen to take his place. The work has to be done and it has to be paid for." (See also to the same effect, *Pacheco* v. *Clark,* 44 Cal.App.2d 147, 151 [112 P.2d 67], and *Newbury* v. *Civil Service Com.,* 42 Cal.App.2d 258, 261 [108 P.2d 745].) In the Campbell case, *supra,* it is said "Unless facts be alleged which constitute a sound excuse for a delay of 15 months, such delay in commencing the action is absolutely indefensible" and deprives "petitioner of all rights to equitable consideration." (P. 315.)

■ Here plaintiff delayed for a period of two years and two months after his discharge was sustained by the Civil Service Commission on April 15, 1952, before filing his original complaint. He states he received notice of the commission's order sustaining his discharge. He does not allege that there was any delay in the transmission of such notice. His complaint contains no allegation that during this period of two years and two months he had been encouraged to believe that he would be reinstated or that he was dissuaded from resorting to legal action by any promises or conduct

220

of the defendants. It is apparent, therefore, that under the foregoing principles and authorities the third amended complaint is vulnerable on its face to demurrer on the theory of laches, which is one of the grounds relied on by defendants.

FAILURE TO COMPLY WITH SECTION 112½
OF THE CITY CHARTER

■ The failure of plaintiff to file a demand for reinstatement within 90 days after his discharge, as required by section 112½ of the city charter* constitutes a bar to any action to compel reinstatement in the absence of an adequate excuse therefor. Plaintiff brings himself squarely within the provisions of the foregoing charter provision. He claims that his discharge was unlawful and prays that he be restored to his position and that he recover full back-salary to the date of his restoration to duty. But it appears by his amended complaint that his demand for reinstatement and his claim for salary were not filed until almost two years after the final action of the civil service commission sustaining his discharge. Hence, his failure to file within the period of 90 days specified in section 112½ of the charter constitutes on its face a bar to this action. (*Moreno* v. *Cairns*, 20 Cal.2d 531, 536 [127 P.2d 914] ; *Temple* v. *Horrall*, 92 Cal.App.2d 177, 179 [206 P.2d 909] ; *Varela* v. *Board of Police Comrs.*, 107 Cal.App.2d 816, 822 [238 P.2d 62] ; *Tennant* v. *Civil Service Com.*, 77 Cal.App.2d 489, 494-496 [175 P.2d 568].)

■ In an attempt to excuse his failure to comply with section 112½ of the charter plaintiff asserts that the section violates the 14th Amendment of the United State Constitution

---

*Section 112½ of the Los Angeles city charter provides:

"Whenever it is claimed by any person that he has been unlawfully suspended, laid off or discharged, and that such lay-off, suspension or discharge is ineffective for any reason, any claim for compensation must be made and a demand for reinstatement must be presented in writing within ninety days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly laid off, suspended or discharged. Such demand for reinstatement must be filed with the Board of Civil Service Commissioners and such claim for compensation for such allegedly wrongful, illegal or erroneous discharge must be filed with the City Clerk. Failure to file such demand for reinstatement within the time herein specified shall be a bar to any action to compel such reinstatement and proof of filing such a demand for reinstatement must be completed and proved a condition precedent to the maintenance of any action for reinstatement. Proof of filing the claim for compensation within the time and in the manner herein specified shall be a condition precedent to any recovery of wages or salary claimed to be due on account of said lay-off, suspension or discharge. Except as herein specified, such claims for compensation shall conform to the requirements of Sections 363, 369 and 376 of this charter."

and article 1, section 21, of the Constitution of California, on the ground that it does not apply to all employees in the classified service of the city and consequently discriminates against plaintiff and every member of a large group of civil service employees and denies to them the equal protection of the law. Specifically, he asserts that only employees who are "subject to trial by the civil service commission for misconduct in their positions" must file a demand for reinstatement within 90 days and that firemen and policemen who are removed under sections 135 and 202 of the charter are not required to do so.

The argument that section 112½ is discriminatory and unconstitutional for the reasons stated by plaintiff is completely answered by the recent decision in *Stoker* v. *Bowron*, 129 Cal.App.2d 671 [277 P.2d 439], (hear. den.) where it was held that the section does apply to all civil service employees of the city, including firemen and policemen. To the same effect see the Moreno, Temple and Varela cases, *supra*, in all of which it was held that section 112½ applied to firemen and policemen of the city of Los Angeles.

The failure of plaintiff to file claims as required by section 112½ of the city charter constitutes a bar to his recovery of any back salary in the absence of facts excusing his failure to comply therewith. Section 112½ quoted in the footnote, *infra*, specifically requires proof of filing a claim for compensation within 90 days as a condition precedent to any recovery of wages or salary claimed to be due on account of any discharge.

### Plaintiff's Excuse for His Delay

In an attempt to excuse and explain his long delay in seeking judicial relief, plaintiff alleges, in substance, that he is a man of advanced years and that the impact upon him of notice of the action of the civil service commission in removing him from his position was severe, since it involved not only the loss of his salary and means of livelihood, but also his pension rights; that while he had no information relative to the legality of his discharge, and while he was not in possession of any facts upon which he could base a claim that the action of the commission in discharging him was unlawful, and while he did not at that time make any such claim, nevertheless, he resolved to and did cause to be made a full, complete and thorough investigation of the records and proceedings of the commission in his case and of the law pertaining thereto. He does not, however, specify

the date on which he commenced his investigation but the fact remains that a period of approximately two years elapsed after his discharge was sustained on April 15, 1952, before he finally filed his demand for reinstatement and his claim for salary.

In *Jones* v. *City of Los Angeles, supra,* page 862, this court, after referring to a similar allegation, to wit, that the petitioner and his attorneys had been "diligently working on and preparing his petition and gathering necessary data therefor," said: "This allegation is merely a conclusion and wholly insufficient to explain or excuse petitioner's long delays for it is completely devoid of any factual support."

That the reasons advanced by the plaintiff to excuse or explain his delay are wholly insufficient is made crystal clear by reference to charter provisions requiring the civil service commission to maintain a public record of its official acts. In the first place, it is obvious that the commission was exercising powers conferred upon it by the charter when it sustained the plaintiff's discharge after a hearing pursuant to section 112(a) and when it was called upon to "adopt, reject or modify" the hearing examiner's report pursuant to section 89(c). In the second place, the commission was required to record these official acts in its minutes in conformity with the provisions of section 76 of the charter.* It is significant that plaintiff has not alleged that the action of the civil service commission of which he complains was not recorded in its minutes or that it was in any way concealed from him. ■ In the absence of such an allegation it must be presumed, since it was an official act of that body, that it was recorded in its minutes. (*Nilsson* v. *State Personnel Board,* 25 Cal.App.2d 699, 704 [78 P.2d 467]; Code Civ. Proc., § 1963(15).)

■ In such circumstances a party is presumed to know whatever he might, with reasonable diligence, have discovered; and when the fundamental facts upon which his alleged cause of action rests are matters of public record, open to his inspection, ignorance of such facts will not excuse his laches. (*Hecht* v. *Slaney,* 72 Cal. 363, 367 [14 P. 88]; *Lady*

---

*Section 76 of the charter (Stats. 1925, p. 1057) reads:
"The powers conferred by this charter upon each of the boards shall be exercised by order or resolution adopted by a majority of its members and recorded in the minutes with the ayes and noes at length. Such action shall be attested by the signatures of the President or Vice-President, or two members of the board, and by the signature of the Secretary of the board."

*Washington C. Co.* v. *Wood,* 113 Cal. 482, 487 [45 P. 809] ; *Hildreth* v. *James,* 109 Cal. 301, 303 [41 P. 1039].)

It follows, therefore, that plaintiff's explanation is wholly insufficient to excuse his delay in seeking judicial relief. Whether or not he knew of the alleged substitution of the commission's ''Conclusion'' for the ''Findings'' of the hearing examiner, he, like all other members of the public, had the means of knowledge and he must be held to have known what he could have ascertained by the exercise of only such diligence as would have been required to walk into the office of the civil service commission and inspect its minutes.

The judgment is affirmed. The purported appeal from the order sustaining defendants' demurrer without leave to amend is dismissed.

McComb, Acting P. J., concurred.

A petition for a rehearing was denied June 8, 1955, and appellant's petition for a hearing by the Supreme Court was denied July 20, 1955. Carter, J., was of the opinion that the petition should be granted.